CHONG CHUM *vs.* KOHALA SUGAR COMPANY.

APPEAL FROM DOLE, J.

HEARING, FEBRUARY 2, 1892.    DECISION, FEBRUARY 26, 1892.

JUDD, C.J., McCULLY, BICKERTON, DOLE, JJ.

In order to the binding effect of conditions and restrictions to be imposed upon immigrants (from countries with which we have no treaty to the contrary), upon which they may be allowed to enter this Kingdom, the immigrants must have knowledge of them before they come to this Kingdom. Subdivision 4 of Section 1 of Chapter 67 of the Laws of 1890, held to be unconstitutional.

DECISION OF DOLE, J., APPEALED FROM.

The plaintiff is one of the Chinese immigrants who came to Mahukona, Island of Hawaii, on the ship Pactolus last July, and were landed there under the provisions of "An Act to authorize the introduction of Chinese agricultural laborers, and to amend Chapter 28 of the Laws of 1887, entitled, ' An Act to regulate Chinese immigration.' "

After argument the bill was amended by plaintiff, the defendant consenting that the amendment be filed, subject to the demurrer.

The bill as amended complains that in May last the plaintiff, then a native and resident of China, was engaged by L. Aseu, an agent for the defendant, and his sub-agents, to come to this country and work on a sugar plantation for fifteen dollars a month, which wages were promised him by the said agents of the defendant; that under the inducement of such promise he came to this country with others of his countrymen; that prior to his leaving China the defendant procured for him a permit to enter and reside within this Kingdom upon the terms and conditions therein set forth, one of which was to the effect that one-fourth of the wages to be earned by him should be retained by his employer and forwarded to the Board of Immigration until seventy-five dollars should have been so accumulated, to be

returned by the said Board to him upon his leaving the King-
dom ; that upon arriving and anchoring in the port of Mahu-
kona, he was informed by the defendant and its agents that he
must execute a written contract with the defendant, to serve it
as a plantation laborer for a term ·of three years at wages of
fifteen dollars a month, but to allow the defendant to retain
three dollars and seventy-five cents a month out of such wages
until the aggregate sum of seventy-five dollars should have been
so retained, and to remit the same to the Board of Immigration for
the purpose of paying the plaintiff's return passage to his native
country at the end of said term, and also should by the said
contract agree to such other stipulations as are mentioned in
Chapter 67 of the Laws of 1890 relating to Chinese agricultural
laborers, the defendant claiming that the plaintiff was bound by
the said condition of the said permit, and that the defendant
was thereby authorized to retain the said sum out of the plain-
tiff's wages as aforesaid.  The plaintiff further complains that
he was at ˚the same time informed by the defendant and its
agents and by the Sheriff of Hawaii, that unless he should
execute such contract he would not be allowed to land, but
would be sent back to China ; that the said ship was not pro-
visioned for such return voyage, and he was informed by the
said L. Aseu, and believed, that if he should be sent to sea on the
said ship he would suffer, and perhaps die, for want of food and
water, and by reason of such information and belief he executed
such written contract, but under protest ; that prior to the
execution thereof, he had neither done nor agreed to do, nor
authorized any one on his behalf to do or agree to do, anything
whereby he could or should forfeit the rights secured by the
Constitution and Laws˙of the Hawaiian Islands to all persons
within the Kingdom, and that the said requirement of the said
permit is unconstitutional and void, and that the said state-
ments made to him as aforesaid on board the said ship as to the
necessity of his execution of such contract, and the consequences
which would ensue upon his refusal, were not authorized by the
Hawaiian Constitution and laws, nor by any act or default on
his part, and that by reason of the premises he was misled and

deceived into leaving China and coming to this country, and the contract induced and made as aforesaid is void and of no effect, and should be so decreed. The bill further suggests that if it should appear that the defendant is not responsible for any of the said misrepresentations, concealments or statements, the contract must be deemed to have been induced and made under a mutual mistake of material facts and of the constitutional and legal rights and liabilities of the plaintiff, and ought therefore to be rectified so as to cause it to conform to the agreement under which he left China, by striking out the said stipulations, of the nature of which he was only informed after his arrival in the Hawaiian Islands.

The prayer of the bill is for a decree declaring the said requirement of the permit of entry and residence to be unconstitutional and void, and enjoining the defendant from further retention of the plaintiff's wages, either by virtue of the requirement of the permit or of the said written contract, and from enforcing the same, and for payment of the moneys already retained by the defendant from plaintiff's wages, and also declaring the said written contract to be void, or, as alternative relief, that the Court find that the same was made under a mutual mistake as to the said stipulations, and decree that it be rectified accordingly, and for general relief.

The bill was demurred to on the following grounds : 1. Whether or not complainant is entitled to relief, inasmuch as the grounds of complaint are covered by Chapter 67 of the Laws of 1890 relative to the introduction of Chinese laborers, raising the question of the validity of the same under the Constitution. 2. The conditions of the contract, that the laborer shall return and as to deduction of wages, do not constitute duress on the part of the defendant, if covered by the terms of the Act of 1890.

The provisions of the Act of 1890 referred to, and which are inserted in full in the said permit and contract, as a part of their stipulation, are as follows :

1. That the Chinese laborer who presents this special residence permit for entry into this Kingdom, shall remain therein for a term not exceeding——years.

2.   That such Chinese laborer shall not engage in any other occupation than that of agricultural laborer, provided that the term "agricultural labor" shall be held to include labor in sugar mills, rice mills, and coffee mills, and all labor incident thereto, during his residence in this Kingdom.

3.   That if such Chinese laborer shall be found out of employment at any time during the term of his residence in this Kingdom, or be engaged in any other employment than that of agricultural laborer, or shall be found in this Kingdom after the expiration of the term of his residence granted by this permit, he may thereupon be arrested and held in custody until an opportunity occurs to return him to China.

4.   That one-fourth of the money due to such Chinese laborer as compensation for work done shall be retained by the employer each month and forwarded by him to the Board of Immigration, to be by it deposited in the Treasury of the Kingdom as a special deposit, subject to the order of the President of the Board of Immigration, and to be returned by the said Board to such Chinese laborer upon his leaving the Kingdom ; provided, however, that such detention and deposit shall cease, whenever the sum to the credit of such laborer shall amount to the sum of seventy-five dollars.   The said Board shall have the authority to pay the return passage of such Chinese laborer out of such sum so deposited.   If such Chinese laborer shall enter into any other employment than that of agricultural laborer, or shall desert his employer, such money so deposited may be forfeited to the Hawaiian Government.

5.   That the said Chinese laborer shall not be entitled to exercise the rights of an Hawaiian citizen as to the term of residence or employment while in the Hawaiian Kingdom, but shall be restricted to the term of residence and employment named in this permit.

6.   That the said Chinese laborer shall, during the whole term of his residence in this Kingdom, be subject to all the rules and regulations of the Board of Immigration now or hereafter to be made.

Section 4.   The presentation of such a permit by any person

for admission into this Kingdom shall be held to be a consent by such person to all of its terms, and shall prevent him or any person on his behalf from denying the validity of the same in any manner whatsoever in any court of justice.

Section 5. Any laborer deserting or leaving or refusing to do the work of the employer shall, besides the provisions of subdivision 3 of section 1, be also subject to the penalties prescribed by law for desertion or refusal to work.

The central point of the controversy raised by the bill and demurrer is the question whether, under all the circumstances, the retention by the defendant of the plaintiff's wages, as stated, is legal. The permit more than authorizes it, it compels it, and the law enacts that the presentation of such a permit for admission into Hawaiian territory shall be considered to be a consent by the holder thereof to all its terms. The plaintiff by his written contract agrees to such retention of his wages, and the statute of 1890 requires it. Clearly the issue is narrowed down to the question as to the constitutionality of the provision of law requiring this action on the part of the employer, which is the sole authority for the insertion of the condition in the permit and contract. The cancellation or reformation of the contract alone would not remedy the matter, for the plaintiff would still be subject to the retention of his wages under the terms of the permit, and the wages already retained would continue to be withheld under the same authority, while, if he should be entirely freed from his contract, he is still required by the permit to keep employed in agricultural labor, subject to the alternative of arrest, imprisonment and deportation to China if found out of such employment; in which case the funds already accumulated out of his wages would be appropriated, regardless of his wish in the matter, to the expenses of such deportation, or forfeited.

The object of this retention of wages, as set forth in the statute and re-affirmed in the permit and contract, was the creation of a special deposit to be returned to the plaintiff only upon his leaving the Kingdom. It is necessary, therefore, to consider as a part of this provision, the condition relating to his leaving

the Kingdom; it is *condition third* of the above stipulation, in which we find that the plaintiff consents that if he shall be found out of employment during the term of his residence in this Kingdom, or shall be engaged in any other employment than that of agricultural laborer, or shall be found in the Kingdom after the expiration of his term of residence, he may be arrested and held in custody until an opportunity occurs to return him to China; and *condition fourth* provides the additional penalty for working in other employments than that of agricultural laborer, of forfeiture of his special deposit; this, of course, the plaintiff also consented to by accepting the permit.

Further examination of the statute in question shows a provision in Section 13, whereby persons admitted into the Kingdom under this Act who transgress the conditions already considered and several other regulations shall be guilty of a misdemeanor and be subject to fine, imprisonment, and deportation to China.

It therefore appears that, under the system established by this statute, a person within the territorial jurisdiction of the Kingdom (*Rex vs. Parish*, 1 Hawn., 58), and therefore subject to our laws, (Civil Code, Section 6) and consequently in whom the inalienable rights recognized by the Constitution as belonging to "all men," (Art. 1) have already vested, may, by contract with the Government, waive certain of these "inalienable rights," authorize the Government to arrest, imprison and deport him in case of any assumption of such rights, and to keep back a certain part of his wages for the expenses of such deportation, or of his obedient but compelled return to his native land at the end of his agreed term of residence without process, and further authorize the government to confiscate such fund in case of his assumption of the inalienable right of acquiring property, to-wit, if he shall enter any other employment than that of agricultural laborer. In other words, the Government obtains its authority for making the exercise of one's inalienable rights a misdemeanor and punishing it as such, and for confiscating his property for such exercise, without legal proceedings, from the individual himself; such action being otherwise ob-

viously objectionable and illegal as inconsistent with the constitutional guarantee of inalienable rights, and as tending to class legislation.

Can an individual confer any valid authority upon the Government or other persons to deprive him of liberty or the freedom of acquiring property, through the stipulations of a contract? This question may be answered by asking another: Can an individual confer any valid authority upon another by contract to deprive him of life? This, I understand, is allowable in China, but clearly it would not be legal here without an amendment to the Constitution.

The rights of life, liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness, belong to all men within the limits of Hawaiian territory, and cannot be relinquished or the control thereof assigned to others by contract.

I find, therefore, that the regulations of.Chapter 67 of the Laws of 1890, above set forth, and all other provisions of the said chapter requiring the assent of the plaintiff to the terms of the said permit as a condition of landing from the said ship Pactolus, lying at the port of Mahukona, as aforesaid, are inconsistent with his constitutional rights, and did not authorize his detention on board the said ship, and the other circumstances complained of whereby he was compelled to accept the condition of the said permit and execute the said contract.

This action on the part of the agents of the Government and of the defendant, being unauthorized, the circumstances under which the plaintiff signed the contract constituted such an interruption of his free agency as to entitle him to relief, if the statements of his bill are sustained.

The demurrer is therefore overruled.

OPINION OF THE FULL COURT, BY JUDD, C.J.

It seems to us that the vice of the whole transaction now before us lies in the fact that the " special residence permit" was not tendered to the plaintiff in China before he started on his voyage to this Kingdom. He had no opportunity of informing

'himself of the conditions upon which he would be allowed to proceed to Hawaii, and of consenting to them or of refusing to proceed under them. The passport which contained the conditions upon which he was to be permitted to enter this Kingdom was obtained for plaintiff in. Honolulu, and his name inserted therein on his arrival at Mahukona, Hawaii, at the time of its presentation to the Customs Officer for his entry into this Kingdom. This was allowed by the Act of 1890, Chapter 67, Section 3. But in our opinion it has defeated itself. While adhering to the opinion expressed by the Justices of the Supreme Court to the Legislature on the 5th of November, 1890, that this Kingdom has the right to impose such conditions and restrictions upon the entry of aliens (with whose nation this Kingdom has no treaty to the contrary) into the territory of this Kingdom as the Legislature deems essential to the welfare, peace and safety of this state, it is vital to the binding effect of these conditions upon the alien immigrant that he should have notice of them before he starts on his voyage to this Kingdom. We are still of the opinion that it would be no infraction of the Constitution to impose conditions as to length of residence and character of the employment in which the immigrant can engage, to which he must assent before being permitted to enter this Kingdom. (See said Opinion, *post*, Appendix.)

It seems to be admitted that the character of the employment was known and consented to by the plaintiff in this case, and that he was to labor under contract for three years. But the conditions in the 4th subdivision of the first section of the Act of 1890, as to retention of one-fourth of the wages of the immigrant, to be deposited in the treasury until it reaches the sum of seventy-five dollars, as a fund from which to defray the immigrant's passage back to China, etc., is in our opinion unconstitutional, as interfering with the liberty of the person and his right of enjoying and possessing property, and is not within the police power of the state. It may be said that it is the means by which the state secures the departure from the Kingdom of the immigrant after the term of his permitted residence has expired.

But if the continuance of the individual in this Kingdom after the specified term is considered by the Legislature to be obnoxious and dangerous to the state, it must provide the means of his deportation. It would be an unwarrantable interference with the right of the individual to make him pay an arbitrary sum from his own wages to get him out of the country into which he has been invited, he having done nothing criminal meanwhile.

But we base our assent to the decree in this case on the position that the plaintiff has come to this country without the provisions as to deduction of wages, as a condition of his entry within, having been made known to him, and therefore they are not binding upon him. And if not binding upon him, he is therefore free from this obligation of the contract made under it. This condition is separable from the other parts of the Act, and it does not become necessary now to pass upon the constitutionality of the whole Act.

It is noticeable that the matter of retention of wages of the immigrant, as prescribed by the fourth subdivision of the Act of 1890, was not made the subject of inquiry by the Legislature to this Court.

Decree affirmed, and demurrer overruled.

*A. S. Hartwell*, for plaintiff.

*W. R. Castle* and *F. M. Hatch*, for defendant.

---

I agree with the conclusions of the Court, under the reasoning of the decision appealed from.

SANFORD B. DOLE.